UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

Bruce Wayne Henion
3339 Jefferson, Scio, Dr. S. E.,
Jefferson and Marion
Oregon 97352
Phone No. 541-327-2985
Plaintiff

v. CV. 01-1234-AS

Marion County Code Enforcement,
Marion County Board of Commissioners
Marion County Legal Counsel
Attention: Gloria M Roy
555 Court St., N.E. 2nd Floor
Salem and Marion
Oregon 97352
Defendant

Case No.______________
Plaintiff's Concise
Statement of Material Facts
Jury Trial: No

---

Pursuant to LR 56.1, Plaintiff, Bruce Wayne Henion, a C5/C6 Quadriplegic of 30 years, presents the following statement of undisputed facts:

1. **Basis for Jurisdiction** (Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.)

A. Specific federal statute: Title II of the Americans Disability Act, Section 504 of the Rehabilitation Act of 1973, was enacted with the purpose of eliminating discrimination against persons with disabilities.

2. **Concise Statement of Material Facts** - Defendant forced Plaintiff's father to evict two care providers from Plaintiff's home while Plaintiff was in a hospital under Doctors Care. Notify Tenant of residence of the hardship in question that he may have been in violation of any Code of Marion County that would allow the eviction of care providers of a 24-hour Quad absent from his primary residence for medical reasons in writing.

Pursuant to LR 56.1, Plaintiff, Bruce Wayne Henion, a C5/C6 Quadriplegic of 30 years, Concise Statement of Material Facts in the case of Marion County code Enforcement allegedly violating Plaintiff's civil rights and /or Disabilities Act Violation

A. **Plaintiff's Evidence** - David C. Henion's statement, submitted as evidence of the alleged Civil Rights and Disabilities Act violation aforementioned with complaints by the Plaintiff, that follow: Whether or not Marion County Code Enforcement Officer has the legal right pursuant to ORS Codes, to force the eviction of Plaintiff's care providers from Plaintiff's home in the absence of Plaintiff from his primary residence. It is for a Judge or Jury to decide. Yet of significant importance, as viewed by the Plaintiff, a C5/C6 Quadriplegic, away from his primary home under Doctors care in and out of the hospital for a duration of time, was that no just cause was presented to Plaintiff for such an action by the Defendant. Plaintiff has no control over required operations to save Plaintiff's life or the duration between operations scheduled by the Veterans Hospital. Plaintiff believes his father to be a credible witness, thereby proving by a "preponderance of the evidence" (that it is more likely than not) that the defendant is legally responsible for the demands and/or damages alleged by the Plaintiff, based on actions Plaintiffs father was forced to take. In order to save the hardship clause on Plaintiffs primary residence.

B. **Marion County's evidences** should clearly show they have no obligation to notify Plaintiff as the Tenant of a hardship clause dwelling and Plaintiff's primary residence, that Plaintiff was in violation of any such Oregon State statute, regulation or county code, regarding live-in care-givers not allowed to remain in the residence of the Plaintiff why Plaintiff was away seeking medical treatment to save his life.

C. **Plaintiff alleges** that the Marion County Code Enforcement Officer violated his Civil Rights and the Disabilities Act, when Marion County ordered the eviction of Plaintiff's care providers from his primary residence that has had a medical hardship since 1990, through a third party, Plaintiff's father.

(1). This action is in contrast for the reason a medical hardship clause is granted for a dwelling for a severely disabled individual where county zoning doesn't allow dual residences, to accommodate the disabled individual and allow the individual to live next to a family member with care providers.

(2). When Plaintiffs father arrived AT the Veterans Hospital at La Jolla, California Spinal Cord Injury Unit, Plaintiff was informed by his father there were no longer live-in care providers as he was forced to evict both David Seadore and Sharon from the Plaintiff's home and primary residence that has had a current medical hardship clause since 1990.

Pursuant to LR 56.1, Plaintiff, Bruce Wayne Henion, a C5/C6 Quadriplegic of 30 years, Concise Statement of Material Facts in the case of Marion County code Enforcement allegedly violating Plaintiff's civil rights and/or Disabilities Act Violation

(3). As a result of the actions of the defendant, Plaintiff had no care providers to go home to, so Plaintiff remained in Mexico after his kidney stone removal operation, to await his August operation at a Regional Veterans Hospital with a Spinal Cord Injury Unit in California.

(4). Plaintiff alleges by testimony of his father, that the Code Enforcement Officer told Plaintiff's father that being in a Veterans Hospital is no grounds for leaving care providers in Plaintiff's home until Plaintiff would be released from the hospital.

(5). As a result of the defendant's actions, when Plaintiff returns home, he will face great economic hardship, having lost two live-in care providers, making it necessary to hire from an Employee Agency as Plaintiff's Mexican Care Manger and Care Attendant does not wish to remain in Oregon without a work visa, presently with a current I-94 permit and Tourist Visa.

D. **Marion County Sheriffs Office Code Enforcement Officer failed to**:

(1). **Notify Plaintiff** that care providers were not allowed to remain in a residence that has a hardship clause for any duration of time while Plaintiff was in the hospital, either verbally or in writing. Furthermore, Plaintiff is the tenant of the hardship residence in question, not Plaintiff's father, therefore Plaintiff should have been so informed so as to allow Plaintiff the opportunity to show just cause why care-givers would remain in a three bed room hardship dwelling, prior to defendant's actions. Plaintiff's primary residence has a mail box and accepts mail from anyone. While zoning may not allow for dual residence on the Plaintiff's fathers farm, Plaintiff's hard ship clause is current and on file with Marion County. If there is indeed, such Codes, Statues or Regulations, that prevent a disabled person that requires 24 hour live-in care providers, the right to remain in the disabled persons home, until the disabled person returns home from the hospital, or for that matter, an extended vacation of a month or longer, it was Marion County's obligation under the law to provide Plaintiff notice of any such violations, if in deed Plaintiff was in violation of any laws of Marion County!

Pursuant to LR 56.1, Plaintiff, Bruce Wayne Henion, a C5/C6 Quadriplegic of 30 years, Concise Statement of Material Facts in the case of Marion County code Enforcement allegedly violating Plaintiff's civil rights and/or Disabilities Act Violation

(2). **Defendant show the evidence**, that Marion County Code Enforcement has the legal right to evict Plaintiff's care providers through a third party and/or (due to a medical leave of absence) while Plaintiff is in a hospital away from home and/ or under-going a succession of operations in a hospital in a Regional Spinal Cord Injury Veterans Hospital during a succession of months away from home, without first notifying Plaintiff. That Plaintiff was in violation of hardship clause regulations (?), Defendant should have lest the care providers in Plaintiff's primary residence until plaintiff returned home.

(3). Marion County Code Enforcement Officer **made it impossible for Plaintiff to return home from the hospital without locating other live in care providers**. Under Doctor's Care, Plaintiff under went two life saving operations in early 2016 and one more in August 2016.

(4). Marion County **did not consider the economic hardship their Code Enforcement Officer inflicted on Plaintiff** once Plaintiff returns home if live in care providers can't be located in time (Legal right to do so to be evidenced.). **Plaintiff's care provider expenses will increase** as a result of defendants actions,upon his return home, from an Employee Agency is necessary, until two live-in care providers (that was a credit to the Plaintiff in return for assistance) can once again live in Plaintiff's residence. The Plaintiff shouldn't have to allocate $15.00 to $20.00 an hour, 24 hours a day by hiring folks at an Employee Agency. Plaintiff would be responsible for hiring a third live in care provider, as this is the only affordable way Plaintiff has been able to survive in Oregon. In Home care providers exchange a portion of rent and expenses as well as receive economic gain. For example, David Seadore and Plaintiff spent time together throughout the day, was on call, helped Plaintiff when-ever he needed something in the absence of another care provider. Both his vehicles had no current tags, a thorn for the Code Enforcement Officer, exclaiming those vehicles must go from the property or tag them. David Seadore received $2,000.00 in October 2015 from me, so why he didn't renew his license or tag his vehicles only he knows, although his truck's right wheel was damaged and was not operational. From October 2014 until evicted in June 2016, David Seadore lived with plaintiff and plaintiffs' Mexican Care Manager and Care Attendant, and together with Plaintiff's father cared for Plaintiff until Sharon was located, moving in around June 2015, assuming night duties while Plaintiff was sleeping on a short schedule in exchange for a residence. Also around the same time, David Sanchez arrived on the property with his fifth wheel to live and watch the east side of the farm and me at night on many occasions, substituting rent for assistance after the first month and received a $1,000.00 in revenue from Plaintiff.

Pursuant to LR 56.1, Plaintiff, Bruce Wayne Henion, a C5/C6 Quadriplegic of 30 years, Concise Statement of Material Facts in the case of Marion County code Enforcement allegedly violating Plaintiff's civil rights and/or Disabilities Act Violation

Live-in care providers are made possible through making deals with folks. David Sanchez left before the Code Enforcement Officer arrived on the property in late 2015, but his fifth wheel remained until November 2015, as Plaintiff was informed folks can't stay in a motor home, trailer or fifth wheel on a small farm in order to visit or care for a severally disabled person.

(5). **Failed to give Plaintiff the opportunity to show just cause** for leaving care providers in his primary residence while away for medical reasons. It should be noted, the very reason for a medical hardship for a dwelling on property not zoned for dual residences, is to accommodate a severely disabled person and allow the individual to live next to a family member. Hence, everything Plaintiff has done and is doing revolves around medical treatment in order to live. Therefore the actions of the Defendant's agent neglect the reason for obtaining a hardship clause.

(6). Marion County Code Enforcement Officer **forced a third party to disrupt two peoples lives**, folks living in Plaintiff's primary residence, without notification from the County in writing to the Plaintiff's tenants and or care providers, or Plaintiff that his care givers must go in his absence, a dual status for anyone providing live in care as allowed by the Domestic Hiring Act, that clarifies Plaintiff is not an employee when hiring folks for domestic in home care.

(7). Marion County **failed to accommodate the Plaintiff's medical necessities** but did collect the annual hardship clause renewal fee signed by a Doctor of Plaintiff's own choosing.

E. **Care Providers** - It should be acknowledge by the Court and Defendant, that live in care providers for a disabled person requiring 24 hour care, are reliant on the residence as their home and the care providers duties and responsibilities take into consideration a reasonable deduction in-care provider expenses and rent in exchange for various duties assisting Plaintiff both in the day and at night, working together with a primary Care Manager and Care Attendant providing morning care. Two care providers forced to leave their residence. Loss of income and home as a result of the Code Enforcement Officer's actions was a hardship to them.

Pursuant to LR 56.1, Plaintiff, Bruce Wayne Henion, a C5/C6 Quadriplegic of 30 years, Concise Statement of Material Facts in the case of Marion County code Enforcement allegedly violating Plaintiff's civil rights and/or Disabilities Act Violation

It will require the Plaintiff now to remain in Mexico until Plaintiff can figure out how to locate live-in care-givers before Plaintiff can come home, after his August operation, remaining in the area of medical treatment until released with a clean bill of health hopefully the Plaintiff prays, some how, two complete strangers, site unseen, no training, no meeting, just through, say a phone call or email, if and when such persons could be located, will be willing to live in with Plaintiff and provide care in Plaintiff's house for Plaintiff, arriving Plaintiff's house in advance of Plaintiff and everything will be just great. Wait a minute. Plaintiff does not even have that option as care providers are not allowed to stay in the Plaintiff's residences in the absence of the Plaintiff. The County does not take into consideration the difficult task in locating care providers in advance, while Plaintiff was home prior to seeking life saving operations.

F. **Plaintiff's 2015 and 2016 Medical, Health and Care related History** revaluate to Plaintiff's law suit against the Defendant.

(1). **Planned Period of absence from home**: December 5, 2015 to May 5, 2016. Plaintiff spent almost a month in the hospital, and was planning on going back home when released May 5, 2016, as Plaintiff had been away from home since arriving the Emergency Room at the Veterans Hospital at La Jolla, California December 5, 2015 with another severe bladder infection. Shortly after arriving, Plaintiff was admitted to the Regional Spinal Cord Injury Unit, and Plaintiff's primary health facility. After being released December 21, 2015, Plaintiff was informed there were three 1 cm kidney stones in the right kidney and one stone was stuck in between the bladder neck and kidney, causing the kidney to pass bacteria to the bladder through the urine. An operation was scheduled for early February 2016. Upon arrival to Mexico, Plaintiff re hired his former employees to assist Plaintiff's Mexican Care Manger and Care Attendant. Operation was postponed until April, during which time Plaintiff had one severe episode of a bladder infection that was treated.

(1). **Background**

Plaintiff was due for his annual in January 2016 and was the reason he left his home in Jefferson, Oregon. Plaintiff could have gone to the Seattle Washington Regional SCI Unit, but chose his primary health facility. Because Plaintiff was ill and didn't know why, he was seen by several Doctors and three urologists as well as visited emergency rooms at least five times in 2015, for bladder infections causing pre-stroke symptoms.

Pursuant to LR 56.1, Plaintiff, Bruce Wayne Henion, a C5/C6 Quadriplegic of 30 years, Concise Statement of Material Facts in the case of Marion County code Enforcement allegedly violating Plaintiff's civil rights and/or Disabilities Act Violation

By November, a second urologist, Doctor Kemp, felt Plaintiff had kidney stones and ordered a cat scan, but Plaintiff's Workers Compensation Insurance Co., Arrowpoint Capital would not authorize the x-ray in time before Plaintiff became ill again, so Plaintiff split. After being told Plaintiff had to have kidney stones removed if he wanted to live, Plaintiff chose to stay near the hospital, so Plaintiff moved back in his Mexican Care Manger and Care Attendant's Beach House 90 miles from the Hospital to wait for his surgery. Upon arrival to Mexico, Plaintiff re hired his former employees to assist Plaintiff's Mexican Care Manger and Care Attendant. Operation was postponed until April, during which time Plaintiff had one severe episode of infection that was treated.

(2). **Present Period of absence from home**: May 5, 2016 to Present. Plaintiff, waiting for an operation scheduled by the Veterans Hospital, to include directed healing time between kidney stone removal and prostate surgery was preempted by an emergency visit that became Plaintiff's SCI Unit Annual at his primary health facility and regional Spinal Cord Injury (SCI Unit), under-going a final operation in August 2016. After Plaintiff's plans were changed by Marion County, Plaintiffs arrival home was postponed. Plaintiff manages his own affairs, contracting with folks to provide Plaintiff attendant care 24 hours a day, relying on a minimum of three individuals and one Care Manager and Care Attendant, who is a Mexican National at present, now going to school on Saturdays, living in Mexico with Plaintiff, working in conjunction with three other care providers providing Plaintiff care in Mexico, at present:

Care Manager and Care Attendant: Jose Heberto Gutierrez Castro
Care Attendant: Daniel Dominguez , Noe Hernandez Sarmiento and Nohemi Valdez Zunigal;

(a). Economic hardship and increased expenses face Plaintiff when he returns home as a result of the actions of the Defendant and it will be impossible for Plaintiff to return home without incurring increased care provider costs, cost that are factored in annually in advance. Funds are set aside for a selected program that provids care for Plaintiff in his residence upon his return, traveling to the hospital and residing in the area of the hospital. Plaintiff's care program spoken of failed when Plaintiff's care providers were evicted by Plaintiff's father after being ordered to do so or else. Plaintiffs present care program is equal to his care program from February 2008 to May 2014.

Pursuant to LR 56.1, Plaintiff, Bruce Wayne Henion, a C5/C6 Quadriplegic of 30 years, Concise Statement of Material Facts in the case of Marion County code Enforcement allegedly violating Plaintiff's civil rights and/or Disabilities Act Violation

(b). Plaintiff does not have the ability to interview or train folks in Oregon from Mexico, nor adequately qualify anyone to provide care for Plaintiff in his home until he returns home, thereby narrowing what Marion County can actually accomplish in behalf of Plaintiff. Therefore, $20.00 an hour to minimum raise DUEincrease, is established as the wage Plaintiff must allocate to an Employment Office for care providers on 8 hour shifts, until such time plaintiff can locate two to three 24 hour live-in care providers once Plaintiff arrives back home. As there are 30 days in a month, for the purpose of a demonstrated example to a monthly cost plaintiff will be forced to allocate at $20.00 an hour x 24 hours a day, equals $480.00 a day x 30 days, totaling approximately $14,400 a month or 24 hours a day x 365 days, totals 8,760 hours x $20.00 an hour to be more exact, for an annual amount of $175,200.00. Plaintiff receives $65,000.00 for care provider's expenses. The difference is $110,200.00.

(c). Plaintiff's burden is to have care providers care for him utilizing every means possible to include offering a home and income or just a home in exchange for care assistance and or household duties.

(d). If plaintiff expends $20.00 an hour, 24 hours a day, his attendant care funds would be exhausted in 3,250 hours, requiring an additional 5,510 hours of coverage for the remaining months of a year. A 30 day month consist of 720 hours divided by 3,250 hours, roughly 4 and ½ months of coverage if plaintiff can't immediately find two-live in care providers. Marion County would be economically liable as part of any settlement until live in care providers are located, an amount consistent with increased expenses of care cost. Plaintiff will incur, as result of the actions of the defendant resulting in the loss of two of the Plaintiff's care providers. From December 5, 2015 to February 5, 2016, Plaintiff planned on being away, but plans changed as did operations scheduling, staying until May 5, 2016, only then to realize, going home was no longer an option.

Pursuant to LR 56.1, Plaintiff, Bruce Wayne Henion, a C5/C6 Quadriplegic of 30 years, Concise Statement of Material Facts in the case of Marion County code Enforcement allegedly violating Plaintiff's civil rights and/or Disabilities Act Violation

References:

Marion County Hardship Clause for Residence at 3339 Jefferson Scio Drive S. E., Jefferson, Oregon 97352, for Plaintiff, Bruce Wayne Henion.

Plaintiff's letters of Disability.

Spinal Cord Injury Unit, La Jolla, California Medical Chart Notes for the periods 5 to 21 December 2015 (Bladder Infection and Annual), April to 5 May 2016 (Kidney Stone removal through the right kidney) and scheduled prostate surgery in August 2016.

Letter to Marion County Board of Commissioners and Marion County Legal Counsel Attention: Gloria M Roy, PO Box 14500, Salem OR 97309, that included the following:

Ref.: Code Enforcement Officers conversation with David C. Henion, plaintiff's father
Encl (1): Letter from David C. Henion's statement sent to an attorney at law
Encl (2): Letter Bruce Wayne Henion posted on the Governor of Oregon's facebook and posted on various facebook sites within the GOP and Donald Trumps facebook on May 6, 2016, Plaintiff's web site at Presidential Material http://www.usscoralseacvb-cva-cv-43ppt.us/index_files/Page5304.htm and R. Lee Ermey's SOUND OFF Forum at Baman47 Health 2016 http://rleeermey.org/viewtopic.php?t=30014

Bruce Wayne Henion